COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Chafin and Senior Judge Clements
Argued at Lexington, Virginia

**PUBLISHED**

JAMES WILLIS CAMPBELL, SR.

v.       Record No. 1923-15-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE TERESA M. CHAFIN
AUGUST 21, 2018

FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge

Robert C. Goad, III (Shrader & Goad, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial, James Willis Campbell, Sr., was convicted of possession with the

intent to distribute methamphetamine, in violation of Code § 18.2-248.[1]  On appeal, Campbell

challenges the trial court's denial of his motion to suppress evidence obtained from a police search

of his property.  He further assigns error to the trial court's denial of his motion to dismiss the

indictment for possession with intent to distribute and the trial court's ruling that the case was not

barred by double jeopardy principles or by Code § 19.2-294.  For the reasons that follow, we affirm

the decision of the trial court.

---

[1] Campbell was also convicted of manufacturing methamphetamine in violation of Code
§ 18.2-248 in a separate proceeding.  On appeal, this Court reversed his manufacturing conviction
on October 25, 2016.  See Campbell v. Commonwealth, 66 Va. App. 677, 791 S.E.2d 351 (2016).
The Commonwealth appealed to the Supreme Court of Virginia.  On December 14, 2017, the
Supreme Court reversed the Court of Appeals decision, reinstating Campbell's manufacturing
conviction.  See Commonwealth v. Campbell, 294 Va. 486, 807 S.E.2d 735 (2017).  The instant
appeal was held in abeyance by this Court pending the Supreme Court's decision in the
manufacturing case.

## Background

On August 6, 2014, Kevin Lockhart, a confidential informant, contacted Investigator James Begley to inform him that a "meth cook" was going to happen in a shed on Campbell's property. Begley told Lockhart to keep him "apprised" of the situation. Begley then made preparations in advance of receiving word from Lockhart that "the cook" was underway. He contacted the Virginia State Police to inform the tactical team of the impending situation. Begley informed his supervisors at the sheriff's office that he would need additional officers on the scene. While Begley was still in the process of making preparations, Lockhart informed Begley that Campbell had acquired all the essential components needed to make methamphetamine and was preparing the ingredients in a shed on his property.

Begley drafted an affidavit and made three copies – (1) a copy to retain; (2) a copy to attach to the search warrant once obtained; and (3) a copy to leave with the magistrate to file with the clerk's office. The magistrate instructed Begley to add "Madison Heights" to the affidavit in order to clarify the location. He only made the addition on the magistrate's copy. Begley retained two copies of the affidavit, the original search warrant which he gave to the Virginia State Police, and a copy of the search warrant. Begley's affidavit stated as follows:

> A confidential, reliable informant has observed a methamphetamine lab in a shed within the curtilage, beside the residence listed in paragraph 2 [of the affidavit] within the past 72 hours. The confidential, reliable informant is familiar with how methamphetamine is manufactured and is familiar with the precursors used to manufacture methamphetamine. The confidential, reliable informant has observed both the precursors and the residents processing the precursors to make the methamphetamine product in the shed beside [redacted] Drive. This officer knows that manufacturing methamphetamine is in violation of the Code of Virginia and that it is a felony offense listed under [Code § 18.2-248].

The officers arrived at Campbell's residence prior to executing the search warrant. Investigator Brandon Hurt positioned himself between twenty-five and thirty yards from

Campbell's shed. He observed the scene for nearly an hour before the execution of the warrant. During that time, Hurt heard people talking and witnessed Campbell's daughter as well as another individual transport aluminum foil and a short hose to the shed. He also observed a significant amount of smoke coming from the shed.

Once the ingredients had been mixed in bottles, Lockhart called Begley. Lockhart testified that the strong fumes forced Campbell to open the door to the shed. Approximately a minute and a half later, the police drove up Campbell's driveway. Campbell and the other individuals hid or ran, but were apprehended by law enforcement within the hour. The officers recovered evidence from the methamphetamine "cook," including rolled up aluminum foil in the bottom of a two-liter bottle; a roll of aluminum foil; muriatic acid; pseudoephedrine; a coffee filter; camping fuel; Drano; lye; dry ice; "sludge from a . . . meth cook in [a] plastic pipe;" and "two different containers containing liquid, both of which field tested [positive] for the presence of methamphetamine."

Begley, who was qualified as an expert witness in the field of methamphetamine production, testified that the process of making methamphetamine used highly combustible, volatile chemicals that, if "cooked" for an extended period of time, could produce carcinogenic and potentially lethal gases.

Virginia State Police Special Agent Glen Phillips, who was also qualified as an expert on the subject of manufacturing methamphetamine, testified that the manufacture of methamphetamine posed a fire hazard and explosion risk. He further stated that Campbell had completed the process of manufacturing methamphetamine.

On February 10, 2015, Campbell was indicted for the felonious manufacture of methamphetamine. Campbell filed a motion to suppress all evidence recovered pursuant to the search warrant. He argued that the search warrant was defective pursuant to Code § 19.2-54

because the clerk of court never received a complete affidavit due to a faxing error or malfunction. The affidavit page received by the clerk of court via fax "included a description of the offense, a paragraph describing the place to be searched, and another paragraph listing the things or persons to be searched." Commonwealth v. Campbell ("Campbell I"), 294 Va. 486, 491-92, 807 S.E.2d 735, 737 (2017). The second page was missing from the fax. It contained a description of the basis for probable cause and an explanation that the information came from an informant and the basis for which the officer believed that the informant was credible. Ultimately, the trial court denied Campbell's suppression motion. While the trial court agreed that the warrant was defective, it concluded that the search was justified by exigent circumstances based on expert testimony and Lockhart's communications with Begley. Id.

On June 9, 2015, Campbell was indicted for feloniously possessing methamphetamine with the intent to distribute it. On June 17, 2015, both the manufacturing and possession with intent to distribute cases were set for trial. By counsel, Campbell requested a continuance on the possession with intent to distribute charge due to the fact that he had only been indicted on that charge less than two weeks earlier. The Commonwealth did not object, and the possession with intent to distribute case was scheduled for August 19, 2015. The trial on the manufacturing charge proceeded on June 17, 2015, and the trial court found Campbell guilty of that charge. Campbell appealed to this Court. On October 25, 2016, this Court reversed the trial court's ruling to admit evidence obtained pursuant to the search warrant and reversed Campbell's conviction. See Campbell v. Commonwealth, 66 Va. App. 677, 791 S.E.2d 351 (2016). The Commonwealth appealed to the Supreme Court of Virginia. The Supreme Court reversed the ruling of the Court of Appeals and affirmed the reasoning and decision of the trial court. Thus, Campbell's conviction was reinstated. See Campbell I, 294 Va. at 497, 807 S.E.2d at 740.

- 4 -

On October 25, 2015, Campbell filed a motion to dismiss the possession with intent to distribute charge. He contended that prosecution of the possession with intent to distribute charge would violate Code § 19.2-294 and constitutional double jeopardy principles. He also filed a motion to suppress on the same day, repeating his argument that the affidavit filed with the search warrant did not comply with Code § 19.2-54. The Commonwealth responded that Campbell had not been subjected to double jeopardy because the manufacturing and possession with intent to distribute offenses contained different elements, each requiring proof of a fact that the other did not. Further, the Commonwealth contended that Campbell could be tried separately for each of the "pots" that had been "cooked." Finally, the Commonwealth argued that because the possession with intent to distribute case was continued on Campbell's request, Code § 19.2-294 did not bar the subsequent prosecution of that charge.

During argument on Campbell's motions, Campbell argued for the first time that the "onus" was on the Commonwealth to move to join the charges pursuant to Rule 3A:6(b) and that scheduling the possession with intent to distribute trial on June 17, 2015 violated Rule 3A:10 because he did not have enough time to prepare.

The trial court ruled that the indictments did indeed charge separate offenses, and thus, double jeopardy was not violated. Further, the trial court ruled that Campbell waived any challenge because both the manufacturing and possession with intent to distribute cases were scheduled to be tried the same day. Campbell asked that they be tried separately. As to the suppression issue, the trial court held that its rulings on the matter in Campbell I controlled, indicating that the search warrant was invalid, but exigent circumstances justified a warrantless search.

Campbell entered a conditional guilty plea, "subject to the court's ruling on the suppression motion in this case, which is basically going to be determined by the appeal" in the

manufacturing case (Campbell I), as well as the appeal of the constitutional double jeopardy and Code § 19.2-294 issues.  Campbell now appeals to this Court in the possession with intent to distribute case.

Analysis

I.  Law of the Case

Campbell argues on appeal that the exigent circumstances exception to the warrant requirement could not save a violation of Code § 19.2-54.  He next contends that the affidavit for the search warrant was constitutionally insufficient and that the good faith exception to the exclusionary rule did not apply.  Thirdly, Campbell contends that exigent circumstances were not present in this case to justify the entry and search of his property without a valid search warrant.

Campbell's first three assignments of error are identical to the assignments of error presented in his appeal of the manufacturing methamphetamine conviction.  See Campbell I, 294 Va. 486, 807 S.E.2d 735.  The facts are the same in this appeal as in Campbell I, and the evidence Campbell seeks to suppress is identical.  In that case, Campbell appealed his manufacturing conviction to this Court.  We reversed the trial court's decision.  The Commonwealth then appealed to the Supreme Court.  The Supreme Court reversed the Court of Appeals decision and reinstated the trial court's order of conviction for the manufacturing of methamphetamine charge.  Id. at 497, 807 S.E.2d at 740.  Specifically, the Supreme Court held that, even assuming the search warrant was insufficient under the requirements of Code § 19.2-54, the search was nonetheless justified as a warrantless search pursuant to the exigent circumstances doctrine.  Id. at 495, 807 S.E.2d at 739.

Therefore, assignments of error 1, 2, and 3 are controlled by the "law of the case" doctrine.  It is well-established that

> [when] there have been two appeals in the same case, between the
> same parties, and the facts are the same, nothing decided on the

first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law.

Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26, 661 S.E.2d 822, 826 (2008) (quoting Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684, 687 (1917)). Therefore, we will not address Campbell's first three assignments of error.

## II. Constitutional Double Jeopardy

On appeal, Campbell contends that the trial court erred by denying his motion to dismiss the possession with intent to distribute indictment and ruling that the case was not barred by constitutional double jeopardy principles. "In reviewing a double jeopardy claim, or a claim based on statutory interpretation, this Court shall conduct a *de novo* review." Davis v. Commonwealth, 57 Va. App. 446, 455, 703 S.E.2d 259, 263 (2011). This Court "examine[s] the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter[s]." Davis v. Commonwealth, 63 Va. App. 45, 52, 754 S.E.2d 533, 537 (2014) (quoting Jones v. Commonwealth, 217 Va. 231, 233, 228 S.E.2d 127, 129 (1979)).

"The origin and history of the Double Jeopardy Clause are hardly a matter of dispute." United States v. Scott, 437 U.S. 82, 87 (1978). "The constitutional provision had its origin in the three common-law pleas of *autrefois acquit*, *autrefois convict*, and pardon." Id. "These three pleas prevented the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense." Id. The principle of double jeopardy was a "universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offense." United States v. Wilson, 420 U.S. 332, 340 (1975) (quoting 4 W. Blackstone, Commentaries on the Laws of England 335-336 (1769)). However, the common-law pleas merely prohibited "repeated 'prosecution for the same identical act *and*

crime,' not the retrial of particular issues or evidence." Currier v. Virginia, 138 S. Ct. 2144, 2153 (2018) (quoting 4 W. Blackstone at 330). English and early American cases demonstrate that line of reasoning.

> In Turner's Case, 30 Kel. J. 30, 84 Eng. Rep. 1068 (K. B. 1663), for example, a jury acquitted the defendant of breaking into a home and stealing money from the owner. Even so, the court held that the defendant could be tried later for the theft of money "stolen at the same time" from the owner's servant. [Id.] In Commonwealth v. Roby, 29 Mass. 496 [(12 Pick. 496)] (Mass. 1832), the court, invoking Blackstone, held that "[i]n considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the same *in law* and *in fact*." Id., at 509. The court explained that a second prosecution isn't precluded "if the offences charged in the two indictments be perfectly distinct in point of law, *however nearly they may be connected in fact*." [Id.] (emphasis added). Another court even ruled "that a man acquitted for stealing the horse hath yet been arraigned and convict for stealing the saddle, tho both were done at the same time." 2 M. Hale, [The History of the Pleas of the Crown, ch. 31, p. 246 (1736 ed.)].

Id. Turner's Case and Roby, in addition to various other cases with similar rulings, "demonstrate that early courts . . . expressly rejected the notion that the Double Jeopardy Clause barred the relitigation of issues or facts." Id.

In more modern double jeopardy cases, "the courts apply today much the same double jeopardy test they did at the founding." Id. (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). The Blockburger Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. The Blockburger test (or the same-elements test) places the focus of the analysis on the proof necessary to prove the statutory elements of each offense, instead of the actual evidence to be presented at trial. Id. If each statute requires proof of a fact that the other does not, they constitute separate offenses, "notwithstanding a substantial overlap

in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).

Ashe v. Swenson, 397 U.S. 436 (1970), "pressed Blockburger's boundaries by suggesting that, in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense." Currier, 138 S. Ct. at 2153. However, the "ultimate focus [in a double jeopardy analysis] remains on the practical identity of offenses, and the only available remedy is the traditional double jeopardy bar against the retrial of the same offense – not a bar against the relitigation of issues or evidence." Id.

In Currier, the Supreme Court addressed a case similar to the present case. Currier, 138 S. Ct. 2144. Currier was indicted for burglary, grand larceny, and unlawful possession of a firearm by a convicted felon. Id. at 2148. In order to avoid the undue prejudice that would occur upon mention of Currier's prior felonies to a jury, Currier consented to a severance of the three charges. Id. The burglary and larceny charges were tried first, and Currier was acquitted. Id. Currier then attempted to stop the felon-in-possession trial on double jeopardy principles. Id. at 2149. The trial court denied Currier's motion. Ultimately, Currier was convicted of the felon-in-possession charge. This Court affirmed the decision of the trial court, stating that double jeopardy was inapplicable because the severance of the trials inured to Currier's benefit, and he had consented to the severance. Currier v. Commonwealth, 65 Va. App. 605, 609-13, 779 S.E.2d 834, 836-37 (2015). The Supreme Court of Virginia affirmed this Court, and Currier appealed.

Currier argued that Ashe required a ruling in his favor. In Ashe, the defendant was charged with six counts of armed robbery for robbing six men at a poker game. Ashe, 397 U.S. at 438. The charges were tried separately. At the conclusion of the first trial, the defendant was

acquitted of the robbery of one victim. The Supreme Court concluded that a second trial violated the Double Jeopardy Clause.

> [T]he Court reasoned [that], because the first jury necessarily found that the defendant "was not one of the robbers," a second jury could not "rationally" convict the defendant of robbing the second victim without calling into question the earlier acquittal. In these circumstances, the Court indicated, any relitigation of the issue whether the defendant participated as "one of the robbers" would be tantamount to the forbidden relitigation of the same offense resolved at the first trial.

Currier, 138 S. Ct. at 2149 (quoting Ashe, 397 U.S. at 445-46) (internal citations omitted). It is important to note, however, that Ashe "forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." Id. at 2150. The Court in Currier observed a "critical difference" between Currier and Ashe – Currier *consented* to a second trial. Id. Accordingly, Ashe cannot be applied to Campbell's case, as he also consented to a second trial.

The Supreme Court notes that Jeffers v. United States, 432 U.S. 137 (1977), is instructive in this exact situation. Currier, 138 S. Ct. at 2150. In Jeffers, as in Currier and the present case, the defendant requested separate trials for each of the counts against him in order to "reduce the possibility of prejudice." Id. The defendant was acquitted of a lesser-included offense. He then argued that double jeopardy barred a trial for the greater offense.

> In any other circumstance the defendant likely would have had a good argument. Historically, courts have treated greater and lesser-included offenses as the same offense for double jeopardy purposes, so a conviction on one normally precludes a later trial on the other. Jeffers, 432 U.S. at 150-151 (plurality opinion); Brown v. Ohio, 432 U.S. 161, 168-169 (1977) (collecting authorities). But, Jeffers concluded, it's different when the defendant consents to two trials where one could have done. If a single trial on multiple charges would suffice to avoid a double jeopardy complaint, "there is no violation of the Double Jeopardy Clause when [the defendant] elects to have the . . . offenses tried

- 10 -

> separately and persuades the trial court to honor his election."
> [Jeffers], 432 U.S. at 152.

Id.

In the present case, Campbell's manufacturing and possession with intent to distribute charges were to be tried concurrently on June 17, 2015.  However, Campbell requested a continuance in the possession with intent to distribute case, arguing that he had been indicted on that charge less than two weeks prior and needed more time to prepare.  He made no objection to the possession with intent to distribute charge itself.  The continuance was granted by the trial court.  The manufacturing trial proceeded, and Campbell was found guilty.  Campbell filed a motion to dismiss the possession with intent to distribute charge, contending that the second trial would violate double jeopardy principles.

"[Campbell's] consent [to a second trial] dispels any specter of double jeopardy abuse that holding two trials might otherwise present."  Id. at 2151.  Campbell's request to sever the charges pending against him and have two separate trials was a voluntary, strategic choice. "[D]ifficult strategic choices like these are 'not the same as no choice,' and the Constitution 'does not . . . forbid requiring' a litigant to make them."  Id. at 2152 (citations omitted).  The Double Jeopardy Clause, "which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice."  Id. at 2151 (quoting Scott, 437 U.S. at 99).

Thus, the trial court did not err in denying Campbell's motion to dismiss the possession with intent to distribute indictment and ruling that the case was not barred by constitutional double jeopardy principles.

### III.  Statutory Double Jeopardy – Code § 19.2-294

Campbell argues that the trial court erred in ruling that his indictment and conviction of possession with the intent to distribute were not barred by Code § 19.2-294.  He contends that

the proceedings in the manufacturing case (Campbell I) and the instant possession with intent to distribute case were "successive" because he was indicted on different dates and the cases were not tried in a single, concurrent evidentiary hearing. Therefore, he argues, he was subjected to multiple prosecutions for the same act.

Code § 19.2-294 states in pertinent part:

> If the same act be a violation of two or more statutes, or of two or more ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others.

Even though Code § 19.2-294 does not explicitly state that it provides a defense of former jeopardy, "it amounts to such a defense in purpose and desired effect." Epps v. Commonwealth, 216 Va. 150, 155, 216 S.E.2d 64, 68 (1975) (citation omitted). Code § 19.2-294 precludes the Commonwealth from "subjecting an accused to the hazards of vexatious, multiple prosecutions." Hall v. Commonwealth, 14 Va. App. 892, 899, 421 S.E.2d 455, 460 (1992) (*en banc*). "Code § 19.2-294 does not bar multiple convictions for the same act when those convictions are obtained in a single trial." Id. at 894, 421 S.E.2d at 457.

Our holding that the possession with intent to distribute trial did not violate constitutional double jeopardy principles also applies here. Although Campbell argues that the manufacturing charge and the possession with intent to distribute charge should have been prosecuted together in a single trial, Campbell voluntarily requested to continue the possession with intent to distribute charge and have two trials. "[Campbell's] consent [to a second trial] dispels any specter of double jeopardy abuse that holding two trials might otherwise present." Currier, 138 S. Ct. at 2151. Campbell waived any right to challenge the decision of the trial court to proceed with the second trial.

The Commonwealth did not "subject" Campbell to "vexatious, multiple prosecutions," which is the primary concern of Code § 19.2-294. <u>Hall</u>, 14 Va. App. at 899, 421 S.E.2d at 460. Rather, Campbell requested two separate trials. Therefore, we find that this argument is without merit.

Conclusion

For the foregoing reasons, we hold that the Supreme Court's ruling in the manufacturing case controls the outcome of Campbell's assignments of error 1, 2, and 3. The search warrant has been held invalid. However, the warrantless search was justified based on exigent circumstances. We further hold that constitutional and statutory double jeopardy principles were not violated in the prosecution of the possession with intent to distribute methamphetamine. We therefore affirm Campbell's conviction for possession with the intent to distribute methamphetamine pursuant to Code § 18.2-248.

<u>Affirmed.</u>

Humphreys, J., concurring in the judgment.

I join entirely in the analysis and judgment of my colleagues that the recent decision of the Supreme Court of the United States in Currier v. Virginia, 138 S. Ct. 2144 (2018), is dispositive with respect to Campbell's fifth assignment of error—that his prosecution in this case constituted a violation of the Double Jeopardy Clause of the Fifth Amendment. I also join in the analysis and judgment of my colleagues that the same logic applicable in Currier is dispositive of his fourth assignment of error—that Campbell's motion for separate trials constitutes a waiver of the application of Code § 19.2-294.

However, regarding Campbell's first three assignments of error, I join my colleagues only in affirming the judgment in this case. As to Campbell's first assignment of error, I do so because I must, since, as my colleagues also correctly note, our Supreme Court's decision in Commonwealth v. Campbell ("Campbell I"), 294 Va. 486, 489, 807 S.E.2d 735, 736 (2017), is binding upon us and controls the disposition of that assignment of error.[2]

---

[2] Campbell's second and third assignments of error assert constitutional infirmities based entirely upon the failure of the magistrate to properly deliver the search warrant and affidavit to the clerk of the circuit court. He reasons that because the warrant was not properly filed, it is a constitutional nullity and therefore no probable cause existed to support a search. Given our Supreme Court's holding in Campbell I, those assignments of error are now moot, and we need not decide them, however I note that the Fourth Amendment's exclusionary rule is not a strict-liability sanction. It is a prophylactic remedy and to the extent it is relevant to the first assignment of error, I respectfully suggest that its purpose is *not* to deter the malfunctioning of a fax machine as apparently occurred here. See, e.g., Matthews v. Commonwealth, 65 Va. App. 334, 347, 778 S.E.2d 122, 129 (2015) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." (quoting Herring v. United States, 555 U.S. 135, 144 (2009))).

Where police have acted reasonably and conscientiously, as in this case where they obtained and properly executed a search warrant invalidated only by the magistrate's failure to transmit it and its accompanying affidavit to the clerk of the circuit court, the Fourth Amendment's exclusionary rule is inapplicable and only the statutory sanction of Code § 19.2-54 could affect the admissibility of the evidence seized from the execution of the search warrant.

Regarding the current appeal with respect to Campbell's conviction for possession with the intent to distribute methamphetamine, Campbell moved to suppress the evidence seized on the same grounds he argued in his earlier trial and appeal for manufacture of methamphetamine. Thus, for the reasons stated by the majority, Campbell I is binding and controls the outcome of this assignment of error and renders two others moot. I write separately to explain why I believe that decision to be flawed and to point out the mischief I believe it will now cause.

The analysis and judgment of our Supreme Court in Campbell I raise several concerns in my mind. First of all, I respectfully suggest that an inescapable inference from even a cursory review of its analysis in Campbell I is that our Supreme Court has concluded that it is fundamentally unfair to bar the use of evidence due to an apparent mechanical failure of a fax machine when police have acted responsibly and appropriately in securing a search warrant and gathered the evidence Campbell sought to suppress in total conformity with the Fourth Amendment. However, as much I, or any judge, might personally agree with that conclusion, it has no place in any legal analysis. An essential requirement of our judicial role, stemming from the constitutional division of power among the three branches of government, is that our subjective opinion regarding the policies embodied in statutes ought to have no bearing on any legal analysis of those statutes. In short, whatever our private opinions of them, it is not for the courts to nullify or undermine the policy decisions of the legislative branch so long as they are constitutional.[3]

Moreover, our Supreme Court's decision in Campbell I ignored the basic constitutional tenet that the Fourth Amendment of the United States Constitution is a floor, not a ceiling. In Cooper v. California, 386 U.S. 58 (1967), the United States Supreme Court held that the states

---

[3] I have also observed over the years that the surest way to obtain the modification or repeal of a "bad" law by a legislature is to strictly enforce it.

remain free "to impose higher standards on searches and seizures than required by the Federal Constitution." Id. at 62. Reversing our Supreme Court in Virginia v. Moore, 553 U.S. 164 (2008), the United States Supreme Court repeated that states may provide "additional protections exclusively as matters of state law." Id. at 171. In other words, the various states may enact statutes that go beyond the minimum requirements imposed by the Fourth Amendment if they choose. The Commonwealth has occasionally done so. Moore dealt with whether evidence must be suppressed when it was recovered as part of a search incident to arrest when the arrest, constitutional under the Fourth Amendment, nevertheless violated Code § 19.2-74, which requires the issuance of a summons rather than a physical arrest for certain misdemeanor offenses. The United States Supreme Court held in Moore that the Fourth Amendment's exclusionary rule applied only to violations of the Fourth Amendment itself and the existence of any exclusionary remedy for violation of a state procedural statute must be found in state law. See id. at 178. "[H]istorically, searches or seizures made contrary to provisions contained in Virginia statutes provide no right of suppression *unless the statute supplies that right*." Troncoso v. Commonwealth, 12 Va. App. 942, 944, 407 S.E.2d 349, 350 (1991) (emphasis added); see also Thompson v. Commonwealth, 10 Va. App. 117, 122, 390 S.E.2d 198, 201 (1990); Hall v. Commonwealth, 138 Va. 727, 733-34, 121 S.E. 154, 156 (1924).

The statute at the heart of Moore, Code § 19.2-74, contained no exclusionary remedy. However, Code § 19.2-54, the statute at the center of both this case and Campbell I, clearly does so. In enacting Code § 19.2-54, the General Assembly imposed a mandatory filing requirement on every judicial officer issuing a search warrant, ordinarily a magistrate. The statutory requirement is both straightforward and draconian. Code § 19.2-54 *requires* that the magistrate deliver or transmit a copy of the search warrant and the supporting affidavit to the clerk of the circuit court of the city or county where the search is to take place, within seven days. This

- 16 -

statute clearly specifies that the failure of the magistrate to do so prohibits the use of any evidence obtained until a "reasonable time" after the warrant and affidavit are filed, provided that such is done within "30 days." The clear implication is that a failure to file is not curable after 30 days.

Specifically, the final paragraph of Code § 19.2-54 provides that the

> [f]ailure of the officer [here, a magistrate] issuing such warrant to file the required affidavit *shall not* invalidate any search made under the warrant *unless* such failure shall continue for a period of 30 days. If the affidavit is filed prior to the expiration of the 30-day period, nevertheless, evidence obtained in any such search shall not be admissible until a reasonable time after the filing of the required affidavit.

(Emphasis added). While inartfully drafted, this statute implicitly provides that evidence seized "under the warrant" is inadmissible if the failure to file the required affidavit continues beyond 29 days. In essence, Code § 19.2-54 establishes a more stringent standard for the admissibility of evidence obtained through search warrants than those required by the Fourth Amendment and also provides a statutory mandate for exclusion of the evidence obtained for non-compliance after 29 days. At least it did until our Supreme Court neutered this statute by "assum[ing]" it was violated but nevertheless holding that, contrary to the United States Supreme Court's decisions in Cooper and Moore, a less stringent constitutional standard trumps a more restrictive statutory requirement and therefore, apparently the *only* criteria for admitting evidence obtained pursuant to a search warrant in the Commonwealth going forward, is compliance with the Fourth Amendment.

I reach the conclusion that our Supreme Court effectively rendered the General Assembly's exclusionary sanction in this statute a nullity in Campbell I, because of that Court's holding that "[w]hatever the scope of inadmissibility contemplated by Code § 19.2-54 for searches made under a defective warrant, nothing in the plain language of this statute compels

- 17 -

the exclusion of evidence obtained in the course of a search that is justified on grounds *other than a warrant*." Campbell I, 294 Va. at 493, 807 S.E.2d at 738 (emphasis added). In my view, this statement ignores both the right of the General Assembly to impose "additional protections . . . as matters of state law" as restated in Moore and it also ignores the plain language of the statute that its exclusionary remedy expressly applies to "any search made under the warrant." In Campbell I and in this case, a search warrant was obtained, executed, and evidence seized pursuant to it. Given that the police in this case obtained a constitutionally valid search warrant from a magistrate, executed that warrant properly, and obtained evidence expressly within the scope of, and authority granted by, the warrant, the holding that the search in this case and in Campbell I was not conducted "under the warrant" is so much in conflict with the facts in the record as to amount to a legal fiction without saying so.

Moreover, to reach this logically strained result, our Supreme Court set aside another basic tenet of appellate review with problematic consequences going forward. After assuming that the warrant was invalid under Code § 19.2-54, our Supreme Court nevertheless concluded that it need not determine if the sanction in that statute applied because the search was justified by the exigent circumstances exception to the normal constitutional requirement that a warrant be obtained prior to a search.

Judicial restraint commands that courts decide cases "on the best and narrowest ground available." Commonwealth v. Swan, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010)). "A fundamental and longstanding precept of this doctrine is that 'unnecessary adjudication of a constitutional issue' should be avoided." Id. (quoting Bell v. Commonwealth, 264 Va. 172, 203, 563 S.E.2d 695, 715 (2002)).

Instead of adhering to its own jurisprudence in this regard, our Supreme Court conducted an entirely unnecessary constitutional analysis expressly to *avoid* construing the statute.[4]  While I am confident that sowing confusion in the jurisprudence of the Commonwealth for this Court and the trial courts was not intended, among the consequences of Campbell I going forward are that no statutory requirement that expands upon the minimum protections of the Constitution is effective in the Commonwealth and also that the courts of the Commonwealth no longer need refrain from deciding constitutional issues, if doing so will avoid the enforcement of a statute we regard as overly unforgiving.

Additionally, and even more troubling to me, is that in its entirely unnecessary constitutional analysis in Campbell I, our Supreme Court applied Fourth Amendment exigent circumstances criteria clearly inconsistent with the jurisprudence on the subject from the Supreme Court of the United States.  Exigent circumstances, in the most basic sense, is quite simply a situation where probable cause exists but it is not practical or reasonable for a law enforcement officer to obtain a search warrant.  The United States Supreme Court has repeatedly stressed that to constitute exigent circumstances sufficient to provide an exemption from the constitutional requirement that a warrant be secured prior to a search, police must be faced with a "now or never" situation."  Riley v. California, 134 S. Ct. 2473, 2487 (2014) (quoting Missouri v. McNeely, 569 U.S. 141, 153 (2013)); see also Roaden v. Kentucky, 413 U.S. 496, 505 (1973).

The Fourth Amendment guarantees the right of liberty against unreasonable searches and seizures by providing:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon

---

[4] I note that Campbell does not challenge the validity of the search warrant at issue based upon a lack of probable cause, upon any deficiency in the manner or scope of its execution by police, or any ground other than purported constitutional consequences flowing from the magistrate's failure to adhere to Code § 19.2-54.

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Before a search occurs, "a warrant must generally be secured." Kentucky v. King, 563 U.S. 452, 459 (2011); see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable[.]").  However, "this presumption may be overcome in some circumstances because '[t]he ultimate touchstone of the Fourth Amendment is "reasonableness."'" King, 563 U.S. at 459 (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)).  The exceptions to the Fourth Amendment's warrant requirement "are few in number and carefully delineated." Katz v. United States, 389 U.S. 347, 357 (1967).  "[I]n general, they serve the legitimate needs of law enforcement officers to protect their own well-being and preserve evidence from destruction." United States v. United States Dist. Court, 407 U.S. 297, 318 (1972).

The presence of "exigent circumstances" is one such exception to the warrant requirement.  As correctly noted by our Supreme Court in Campbell I, the exigent circumstances exception "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] *warrantless* search is objectively reasonable under the Fourth Amendment." Campbell I, 294 Va. at 493, 807 S.E.2d at 738 (quoting King, 563 U.S. at 460) (some internal quotation marks omitted) (emphasis added).  Essentially, it "allows a *warrantless* search when an emergency leaves police *insufficient time to seek a warrant*." Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016) (referencing Michigan v. Tyler, 436 U.S. 499, 509 (1978)) (emphasis added); see also Schmerber v. California, 384 U.S. 757, 771 (1966) (upholding a warrantless search when "there was no time to seek out a magistrate and secure a warrant").  However, after

correctly stating the definition of exigent circumstances, our Supreme Court in <u>Campbell I</u> then misapplied that definition by ignoring the fact that the key phrase in all of these cases is "*warrantless* search."

The United States Supreme Court has recognized many common situations where obtaining a search warrant is objectively unreasonable. "Our decisions have recognized that a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action *and no time to secure a warrant*." <u>Tyler</u>, 436 U.S. at 509 (emphasis added).

These situations include the so called "emergency aid exception," where "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." <u>Brigham City</u>, 547 U.S. at 403. The hot pursuit exception recognizes "the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons." <u>United States v. Santana</u>, 427 U.S. 38, 42 (1976). And, perhaps most on point in this case, is the exception permitting "a warrantless entry onto private property . . . to prevent the imminent destruction of evidence." <u>Brigham City</u>, 547 U.S. at 403. There are numerous other examples of exigent circumstances but what every single one of them has in common is that they are situations where it would not be objectively reasonable for the police to take the time to obtain a warrant.[5]

---

[5] <u>See, e.g.</u>, <u>Warden v. Hayden</u>, 387 U.S. 294 (1967) (warrantless entry of house by police in hot pursuit of armed robber); <u>Ker v. California</u>, 374 U.S. 23 (1963) (warrantless and unannounced entry of dwelling by police to prevent imminent destruction of evidence); <u>N. Am. Cold Storage Co. v. Chicago</u>, 211 U.S. 306 (1908) (warrantless seizure of unwholesome food); <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905) (warrantless compulsory smallpox vaccination); <u>Compagnie Francaise v. Bd. of Health</u>, 186 U.S. 380 (1902) (warrantless health quarantine).

In all of these cases, the overarching principle expressed by the United States Supreme Court is that if there is a "compelling need for official action and *no time to secure a warrant*," the warrant requirement may be excused. See Tyler, 436 U.S. at 509 (emphasis added).

No such excuse existed in either Campbell I or this case. According to our Supreme Court as reaffirmed in Campbell I, the factors relevant to an exigent circumstances determination include, but are not limited to:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Campbell I, 294 Va. at 495, 807 S.E.2d at 739-40 (quoting Verez v. Commonwealth, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985)). These factors are to be considered "as they reasonably appeared to trained law enforcement officers to exist *when the decision to enter was made*." Verez, 230 Va. at 411, 337 S.E.2d at 753 (emphasis added).

I have several problems with the application of the Verez factors to the facts found in both Campbell I and this case. Initially, I note that in this case as in Campbell I, none of the Verez factors were likely the subject of any consideration at all by the police "when the decision to enter was made" since they had obtained and were executing, what they believed to be, and at the time actually was, a valid *search warrant*. Additionally, I am troubled by our Supreme Court's determination that four of the Verez factors favored a finding of exigent circumstances. Clearly, as they noted, "[t]he existence of probable cause is not in doubt here" but probable cause

- 22 -

is a requirement for *any* search and is not a factor in determining whether the requirement to obtain a warrant is excused.  Campbell I, 294 Va. at 496, 807 S.E.2d at 740; see also Welsh v. Wisconsin, 466 U.S. 740, 753 (1984) ("[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed[.]").

The manufacture of methamphetamine is undoubtedly dangerous to "cooks" and bystanders alike and is certainly a serious offense.  However, our Supreme Court's reliance on two other Verez factors—the degree of urgency and the "disposability of evidence[,]" as characterized in Campbell I—are not supported by the record.  As described by our Supreme Court, "[w]here there are exigent circumstances in which a reasonable police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to *permit action without prior judicial evaluation*."  Smith v. Commonwealth, 56 Va. App. 592, 598, 696 S.E.2d 211, 214 (2010) (quoting Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 853 (1981)) (emphasis added).  However, unlike in Smith and Wright, in Campbell I and in this case, the record establishes that police obviously had the time to secure the judicial evaluation of probable cause and formal authorization to search for and seize evidence of criminal activity that the Fourth Amendment prefers.  It seems axiomatic to me that the fact that they did so, pretty conclusively establishes that this was *not* a situation where the degree of urgency and the "disposability of evidence" made it necessary to act in the absence of such prior judicial evaluation and authorization.

Moreover, in reaching its holding that the police here need not have bothered to obtain a search warrant, our Supreme Court deviated from the Fourth Amendment jurisprudence of the United States Supreme Court by considering "the degree of urgency involved and the time required to get a warrant" as just one factor in an exigent circumstances analysis that may be outweighed by others when, in fact, it is the *overriding* factor.  Since they went to the trouble of

actually complying with the letter of the Fourth Amendment, the police officers in these cases clearly did not share our Supreme Court's various *ex post facto* conclusions that there was a likelihood of evidence being removed or destroyed, that the "cooks" knew that they were being watched by the police or by an informant, or that there was any "risk of flight" if they took the time necessary to secure a warrant. Instead, the record is clear that law enforcement officers were on the scene of the "cook," conducting surveillance well before executing the search warrant. Under the facts of this case, the fact that police actually obtained a constitutionally valid search warrant categorically contradicts any suggestion that this was a "now or never" situation where officers believed that the methamphetamine would be destroyed or removed if they took the time to do what they did – obtain a search warrant.

In summary, where police actually secure a search warrant, the factors mentioned in Verez to determine if it was reasonable for police to *not* obtain a warrant become irrelevant because exigent circumstances to justify a *warrantless* search cannot exist as a matter of law if there has been sufficient time for police to actually obtain the search warrant the Fourth Amendment ordinarily requires.

To be clear, there is no violation of the Fourth Amendment in this case any more than there was in Campbell I and the search warrant issued in this case was entirely valid at the time of its execution. It is only the subsequent failure of a magistrate to comply with a purely statutory requirement that rendered inadmissible the evidence obtained in the search. My view is simply that there was no need for our Supreme Court to construct a retroactive and very problematic constitutional rationale to justify a warrantless search that was actually based upon a constitutionally valid search warrant, other than to circumvent the will of the General Assembly as expressed in a presumptively constitutional, though apparently unpalatable statute.

Although I am bound to apply its judgment to this case, for the reasons discussed above, I respectfully disagree with the analysis of our Supreme Court in <u>Campbell I</u>, but nevertheless join my colleagues in affirming the judgment below.