COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Fulton
Argued at Alexandria, Virginia

UNPUBLISHED

SOHO ARLINGTON LLC

v.      Record No. 1809-23-4

AMES CENTER, L.C.

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
FEBRUARY 11, 2025

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Timothy J. McEvoy (Richard G. Cole III; Cameron/McEvoy PLLC,
on briefs), for appellant.

Michael W. Robinson (Henry F. Brandenstein; Carly M. Celestino;
Venable LLP, on brief), for appellee.


SOHO Arlington LLC (SOHO) appeals a declaratory judgment ruling that Ames Center,

L.C. (Ames) is a third-party beneficiary under SOHO's land lease and granting Ames the right to

enter SOHO's property for safety purposes during construction. SOHO challenges the court's

construction of the lease, its determination of Ames's rights under the lease, and its finding of a

justiciable controversy. SOHO also assigns error to the court's refusal to empanel a jury and its

admission of expert testimony. For the following reasons, we affirm.

BACKGROUND

Ames owns a parcel of land directly adjacent to property leased by SOHO on which SOHO

operates a hotel. In 1973, the original owner of the SOHO land leased the property to a

development company, and the lease (the Ground Lease) was ultimately assigned to SOHO in 2018.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Ames plans to excavate along the property line between the two lots to construct new buildings on its land. Ames argues that, to do so, it has a right to enter the SOHO property as a third-party beneficiary under Section 24.01 of the Ground Lease, which reads as follows:

> If any excavation, subsurface construction, remodeling or other building operation (hereinafter collectively referred to as an "Excavation") shall be made or contemplated to be made for building or other purposes upon property, avenues, streets, alleys, vaults or passageways adjacent to, or nearby the Premises, Tenant, in compliance with all applicable provisions of all Laws and Ordinances, either
>
> (a) shall afford to the person or persons causing or authorized to cause such Excavation the right to enter upon the Premises for the purpose of doing such work as such person or persons shall consider to be necessary to the safety and preservation of any of the foundations, walls or structures of the Building from injury or damage and to support the same by proper foundations, or
>
> (b) shall, at the Tenant's expense, do or cause to be done all such work as provided in subdivision (a) above.

In July 2018, Ames unsuccessfully tried to reach an agreement with SOHO regarding the upcoming construction and proposed two "Cooperation Agreements" to allow it to enter SOHO's property and airspace. Neither agreement was signed. Ames filed a declaratory judgment action in December 2019, asking the court to declare it a third-party beneficiary under the Ground Lease with the right to enter SOHO's property, as provided by the lease, to facilitate excavation and construction.

## I. Initial Proceedings and First Appeal

In September 2020, Ames moved for partial summary judgment arguing that the Ground Lease unambiguously gave it third-party beneficiary rights. SOHO contended that there was no justiciable controversy. The court held that Ames was a third-party beneficiary but found no justiciable dispute about the scope of Ames's rights. Both parties appealed.[1] In *Ames Center, L.C.*

---

[1] The Supreme Court granted Ames's appeal but denied SOHO's petition.

*v. SOHO Arlington, LLC* (*Ames I*), 301 Va. 246, 256 (2022), the Supreme Court remanded the case after holding that the court correctly found that Ames was a third-party beneficiary but erred in dismissing the issue as non-justiciable.

## II. Pre-Trial Motions

### A. *Jury Demand*

Contending that questions of fact required resolution, SOHO filed a demand for a jury trial. Ames moved to strike the request and argued that the dispute involved a question of law, not fact. Ames also asserted that Code § 8.01-188 does not provide a separate right to a jury trial for declaratory judgment suits.[2] The court denied the demand.

### B. *Ambiguity of the Ground Lease*

In a pre-trial hearing, SOHO argued that Section 24.01 of the Ground Lease is ambiguous. Although SOHO argued the provision is ambiguous, it posited that the provision unambiguously gave Ames a right to work only on "structural elements . . . that can be protected by shoring and 'proper foundations'" and that the term "building operation" only referred to "activities within the existing buildings on Ames'[s] property." According to SOHO, the phrase "in compliance with all applicable provisions of all Laws and Ordinances" unambiguously meant Ames's right to enter must be based on other laws, ordinances, or negotiated easements—"[i]n short, the requisite authority must be extra-contractual." SOHO contended that Ames's efforts to negotiate the Cooperation Agreements supported this interpretation.

---

[2] Code § 8.01-188 provides:

> When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not.

The court found that the lease was unambiguous and ruled that a requirement for extra-contractual authority would render the provision superfluous. The court concluded that the lease requires SOHO to allow Ames to enter SOHO's property "to safeguard and preserve the foundations, walls or structures" of the hotel for anything ranging from excavation to above-grade constructions on the Ames property.

C. *Motion to Exclude Expert Testimony*

SOHO moved *in limine* to exclude expert testimony. SOHO argued that parts of experts Michael L. Lenkin and Ketan H. Trivedi's opinions were untimely disclosed. Trial was scheduled for June 5, 2023, but was continued to August 21. A January 5 scheduling order required expert designations by March 7. After the case was continued, the court entered a new scheduling order on June 5 but crossed out the disclosure deadlines and wrote "moot." The June 5 order also closed discovery 30 days before trial, on July 21.

Ames designated Lenkin as an expert in tower cranes and Trivedi as an expert in underpinning and support design back in November 2020. Ames supplemented the expert designations on March 7 and July 21, 2023. Initially, Ames proffered that Lenkin would testify to the safety and efficiency of using tower cranes in urban-setting constructions and that the use of "two (2) tower cranes . . . is necessary and reasonable . . . and can be done without damage to [SOHO's] adjacent hotel building." The July 21 supplement stated that Lenkin would opine about a one-tower-crane plan that would "significantly increase the safety of all of the construction activities along the boundary line and thereby minimize the risk of damage to the hotel." Ames's counsel also disclosed the possibility of a single tower crane in an email to SOHO's counsel on May 10, 2023, prior to Lenkin's deposition.

The March 7 disclosure proffered that Trivedi would testify "that depending on . . . unforeseen subsurface conditions, underpinning might still be necessary" and would "provide

essential support for the structural integrity of [SOHO's] hotel." The July supplement stated that Trivedi would testify regarding "underpinning work that may be required for the hotel loading dock area" and "opine that necessary underpinning will provide essential support for the structural integrity of the hotel." He would further testify that any underpinning could be done safely and according to "well established engineering and construction practices."

SOHO argued that the July 21 supplements were untimely under both the original January 5 and the June 5 scheduling orders because they came after SOHO's expert rebuttal designations were due under the later order. SOHO also contended that the supplements disclosed new subject matter and that the January 5 order was controlling because the June 5 order had the deadlines crossed out and marked as "moot."

The court denied SOHO's motion to exclude the testimony. It found the November 2020 disclosures provided sufficient notice about the experts' opinions and the July 21, 2023 supplements did not change the bases of these opinions.

### III. Trial and Final Order

During trial, Tim Friemel, Ames's project manager, testified that Ames intended to build a "podium piece" to support one of the towers it is planning to construct[3] and that the "podium piece runs all the way to the property line" between the Ames and SOHO property, so that the hotel and podium will "virtually touch." Friemel explained that safety considerations necessitated underpinning SOHO's hotel during excavation and that a tower crane was "the most efficient, safest way to build this building." According to Friemel, it also was necessary to use a tower crane that swings over portions of the SOHO property to hoist building materials to the construction along the property line. Friemel acknowledged that tower cranes could be used without overswinging the

---

[3] Ames plans to build a two-tower apartment complex. The podium will support the tower closest to the SOHO property (the South Tower).

SOHO property but would require using alternative hoisting methods for areas that those non-overswinging cranes could not reach.

Lenkin testified that using a single tower crane that overswings the SOHO property would be safer and more efficient than alternative hoisting methods or using multiple cranes that do not overswing. He explained that a single tower crane was safer because two cranes, for example, may interfere with each other. Trivedi testified that he anticipated that the construction on the Ames property would require underpinning of the SOHO property.

At the conclusion of Ames's case, SOHO moved to strike, arguing that Ames failed to present evidence of a justiciable controversy. The court denied the motion and ruled that the case required the adjudication of Ames's rights to enter and underpin SOHO's property under the Ground Lease.

SOHO presented one witness—Scott Kucinski—the chief operating officer of Sotherly Hotels, which owns SOHO. He explained that SOHO would not consent to underpinning until Ames had a permit and SOHO's consultants agreed that underpinning would be necessary. Kucinski also stated that SOHO would not agree to a tower crane that overswings the hotel's property because of the impact on the hotel's operations.

At the conclusion of trial, the court held that Ames had a right to enter the SOHO property to use a single tower crane and to perform underpinning as well as "for the purpose of doing such work and engaging in such construction related activities and operations *as Ames considers necessary* to safeguard and preserve the foundation, walls or structure of the SOHO [hotel]." (Emphasis added). The court found that "Ames'[s] finding that underpinning will be necessary is supported by the record and is reasonable." It also found Ames had established that:

> [U]sing one tower crane is the safest method to apply the new
> structure's façade—of considerable tonnage—and to move materials
> close to the common property line to avoid the unintended

consequence of injury or damage to the SOHO building; that the one tower crane is necessary for that purpose.

The court continued that, based on Ames's evidence, the use of a mobile crane was "not possible" and "could have catastrophic consequences for the SOHO building."

The court found "no material fact genuinely in dispute" because SOHO did not rebut Ames's evidence. It concluded that the Ground Lease gave Ames the right, in accordance with its expert advice and with approval of controlling government authorities, to "enter upon the SOHO parcel to underpin as necessary," "use one tower crane," and perform any work "as Ames considers necessary to safeguard and preserve the foundations, walls or structure" of the SOHO property. The court entered a declaratory judgment order incorporating its ruling, and SOHO now appeals.

ANALYSIS

I. Assignments of Error 1, 2, and 3—Ames's Rights Under Section 24.01

SOHO contends the court erred in finding that Ames has the right to enter the SOHO property to engage in activities that Ames considers necessary to protect the hotel, including using one tower crane and underpinning SOHO's property. We "afford deference to the trial court's factual findings, but we review de novo its application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014). Factual findings are reviewed "in the light most favorable to the prevailing parties below." *Callison v. Glick*, 297 Va. 275, 287 (2019). "The interpretation of a contract presents a question of law subject to de novo review." *PMA Cap. Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 357-58 (2006).

SOHO argues that Section 24.01 of the Ground Lease does not authorize Ames's desired access rights. It contends that the phrase "excavation, subsurface construction, remodeling or other building operation" refers only to below-grade construction or maintenance of existing structures because the phrase "other building operation" does not include the specific term "construction."

SOHO relies on the principle of *ejusdem generis* to support its conclusion and further argues that the court's interpretation is unreasonable because Ames did not prove that either the tower crane or underpinning were strictly necessary. SOHO argues the court's determination that Ames has a legal right to enter the SOHO property for construction activities related to the safeguarding of SOHO's property is "not tied to any concrete, existing controversies" and instead gives "carte blanche authority" for Ames to enter the property. We disagree.

First, the argument that "other building operation" does not include construction ignores the fact that the language of Section 24.01 continues after "excavation, subsurface construction, remodeling or other building operation" with the phrase "made for building or other purposes." The meaning of the verb "build" includes the construction of new structures. *See Build*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/build (last visited Feb. 10, 2025) (defining "build" as "to cause to be constructed"). Thus, although the section does not use the term "construction," the plain language clearly includes the activity. *See Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173-74 (2002) (using a dictionary entry to determine plain meaning).

Second, the rule of *ejusdem generis* provides that when a list of particular things is followed by a general word, the general word is restricted in its meaning by the more particular things listed previously. *See Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 724 (2019) (explaining the rule of *ejusdem generis* as restricting the meaning of the general word). Here, the specific terms "excavation, subsurface construction, [and] remodeling" are not limited to maintenance or repair work as SOHO claims. Therefore, these specific terms do nothing to limit the list's general term, "other building operation," to maintenance or repair work. Imposing such a limitation on the general term would have the effect of limiting the meaning of the particular things—opposite to what the rule requires.

Third, the Ground Lease gives a "right to enter . . . for the purpose of doing [building operation] work *as such person or persons shall consider to be necessary* to the safety and preservation of any of the [SOHO property]." (Emphasis added). Ames's project manager and expert witnesses testified about the necessity of using a tower crane and underpinning the hotel. At no point during the trial did SOHO rebut this testimony. The court made a factual finding that underpinning and a single tower crane were necessary to avoid damage to the SOHO property. Because these factual findings are supported by unrebutted evidence in the record, the court did not err. *See Cocke v. Commonwealth*, 68 Va. App. 11, 16 (2017) (finding no error when there was "unrebutted[] evidence that supported the trial court's determination").

Finally, we disagree with SOHO's contention that the court's decision gives Ames "carte blanche authority" to enter and work on SOHO's property. The court explicitly limited Ames's right to enter the SOHO property in order "to safeguard and preserve the foundations, walls, or structure of the SOHO building from injury or damage," and required Ames to do so "according to expert findings and advice[] and as approved by the controlling governmental authority." Ames does not have unfettered access to SOHO's property. For these reasons, the court did not err in finding that Ames has a right to enter the SOHO property to protect the hotel by underpinning and using a tower crane during construction.

## II. Assignment of Error 4—Ambiguity in the Lease

SOHO contends that the phrase "other building operation" in Section 24.01 is ambiguous and required the court to consider parol evidence. SOHO proffered that the unexecuted Cooperation Agreements showed the parties' practical construction of the Ground Lease. According to SOHO, the proposal of the Cooperation Agreements showed that even Ames did not believe that the Ground Lease gave Ames the right to enter SOHO's property. "On appeal, the

Court reviews a trial court's interpretation of a contract de novo." *See Plunkett v. Plunkett*, 271 Va. 162, 166 (2006).

"A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 119 (2002). "Instead, it must be objectively reasonable to understand the contractual language 'in more than one way' or to conclude that it 'refers to two or more things at once.'" *Vilseck v. Vilseck*, 45 Va. App. 581, 588-89 (2005) (quoting *Pocahontas Mining*, 263 Va. at 173). Here, the plain meaning of the provision is clear. Both Section 24.01 as a whole and the phrase "other building operation" clearly contemplate the construction of new buildings on adjacent properties, and the phrase is not limited to mean maintenance or remodeling.

Parol evidence is admissible only when a contract is unambiguous and cannot be used to create ambiguity where there is none. *See Doswell Ltd. P'ship. v. Va. Elec. & Power Co.*, 251 Va. 215, 223 (1996) ("[P]arol evidence may not be used to first create an ambiguity and then to remove it."). Although the parties' practical construction is entitled to great weight, "to establish a practical construction of a contract by the parties thereto by acts of the parties, the acts must have been done in pursuance of and by reason of the contract." *Roanoke Ry. & Elec. Co. v. Virginian Ry. Co.*, 159 Va. 289, 293 (1932). The court found the language of Section 24.01 is unambiguous. SOHO's proffered parol evidence creates ambiguity where there is none. Further, the unexecuted Cooperation Agreements are irrelevant to the parties' practical construction. Here, there is no evidence that Ames sought SOHO's cooperation *because of* the Ground Lease or Section 24.01, but merely because SOHO was the current possessor of the adjacent property. Because the language of the Ground Lease is unambiguous, the court did not err in excluding SOHO's proposed parol evidence.

### III. Assignment of Error 5—Justiciable Controversy

SOHO argues that Ames failed to establish a justiciable controversy at trial. It contends that, in *Ames I*, the Supreme Court only determined that Ames had pleaded a justiciable controversy. According to SOHO, Ames was therefore still required to introduce evidence establishing that controversy at trial.

The issue of whether a justiciable controversy exists is a question of law that is reviewed de novo on appeal. *See Platt v. Griffith*, 299 Va. 690, 692 (2021) (reviewing the question of standing, a justiciability question, de novo). But issues previously decided on appeal cannot be "re-examined on a second appeal." *Campbell v. Commonwealth*, 69 Va. App. 217, 225 (2018) (quoting *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008)).

In *Ames I*, the Supreme Court did not merely find that Ames had pleaded a justiciable controversy; it found that a justiciable controversy in fact existed. It held that "[t]he parties' dispute over the meaning of Section 24.01 involves an 'actual controversy' arising out of an 'actual antagonistic assertion and denial of rights,'" presenting a justiciable controversy. 301 Va. at 256 (quoting Code § 8.01-184). Nothing has changed since the Supreme Court decided *Ames I* that would nullify its holding. We cannot re-examine the issue. *See Campbell*, 69 Va. App. at 225. Thus, the court did not err by finding a justiciable controversy and denying SOHO's motion to strike.

### IV. Assignment of Error 6—Jury Demand

Conceding that Code § 8.01-188 does not create a right to a jury trial in declaratory judgment actions,[4] SOHO argues that the Code is not "preclusive of one" and that it had a

---

[4] In *Angstadt v. Atlantic Mutual Insurance Co.*, 254 Va. 286, 292 (1997), the Supreme Court held that Code § 8.01-188 "does not provide a party in a declaratory judgment suit a separate right to a binding jury verdict.

constitutional right to a jury to determine questions of fact. Those questions of fact, according to SOHO, are the dueling contract interpretations and whether a tower crane is actually "necessary."

"[C]onstitutional arguments are questions of law that we review de novo." *Montgomery Cnty. v. Va. Dep't of Rail & Pub. Transp.*, 282 Va. 422, 435 (2011). But the interpretation of an unambiguous contract is the purview of the court and not a question for the jury. *See Foreign Mission Bd. of S. Baptist Convention v. Wade*, 242 Va. 234, 237 (1991) ("Submitting a written contract to the jury for interpretation is proper only when the language is ambiguous."). "A party does not have a constitutional right to a jury trial if a case can be determined as a matter of law based upon material facts not genuinely in dispute." *Kohn v. Marquis*, 288 Va. 142, 146 (2014). A fact is "genuinely in dispute when reasonable factfinders could 'draw different conclusions from the evidence.'" *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

SOHO has not identified any issues genuinely in dispute for which it would have a right to a jury. The court found that there was "no material fact genuinely in dispute" because SOHO failed to present any evidence contradicting Ames's witnesses' testimony that the use of a tower crane and underpinning was necessary. There was no question genuinely in dispute for a jury to consider because no reasonable factfinder could draw different conclusions. *See id.* Similarly, the language of Section 24.01 itself is unambiguous and therefore not subject to jury consideration. *See Wade*, 242 Va. at 237.

V. Assignment of Error 7—Failure to Exclude Expert Testimony

SOHO argues that the court abused its discretion when it denied SOHO's motion *in limine* to exclude Lenkin and Trivedi's opinions contained in the July 21, 2023 supplement. "Generally, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of

- 12 -

that discretion." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Avent v. Commonwealth*, 276 Va. 175, 197 (2010)). An expert witness disclosure must include both the subject matter and "facts and opinions to which the expert is expected to testify." *John Crane, Inc. v. Jones*, 274 Va. 581, 591 (2007) (quoting Rule 4:1(b)(4)(A)(i)). Further, parties to a litigation are required to supplement expert witness designations to add or correct responses to discovery requests. *See* Rule 4:1(e) (requiring supplementation).

The court did not abuse its discretion when it denied SOHO's motion *in limine*. SOHO knew about the one tower crane plan in May 2023, prior to Lenkin's deposition. According to Ames, the supplement regarding the underpinning of the loading dock was based on updated information of the geological conditions under the SOHO property. Trivedi's opinion about the potential need for underpinning did not change, but rather he became even more certain that an underpinning was indeed necessary. The experts' opinions were neither unforeseeable nor a surprise at trial. *See deCamp v. deCamp*, 64 Va. App. 137, 148-49 (2014) ("The purpose behind discovery rules is to eliminate 'surprise at trial' by 'disclos[ing] all relevant and material evidence before trial in order that the trial may be an effective method for arriving at the truth.'" (alteration in original) (quoting *Little v. Cooke*, 274 Va. 697, 717 (2007))). They did not contradict the earlier disclosures but merely responded to new information about the construction site. SOHO could have anticipated both witnesses' opinions from the earlier disclosures. SOHO did not have any witnesses who rebutted the experts' opinions—in their pre- or post-supplementation form. Accordingly, the court did not abuse its discretion by denying SOHO's motion *in limine*.

CONCLUSION

In short, based on the Supreme Court holding in *Ames I*, the circuit court correctly found that Ames presented a justiciable controversy. Reviewing Section 24.01 de novo, that provision unambiguously sets forth Ames's right to enter the SOHO property to do the underpinning and

other work needed to provide for the safety and preservation of SOHO's building during the upcoming excavation and construction of Ames's apartment complex towers. Section 24.01 therefore does not require admission of parol evidence for its interpretation. Likewise, the court did not err in denying SOHO's jury demand because no factual issues remained genuinely in dispute—unrebutted evidence supported the court's conclusion that Ames considered it necessary to enter SOHO's property for "the safety and preservation of . . . [SOHO's] Building . . . to protect it from injury or damage." Finally, the court did not abuse its discretion in allowing the expert testimony concerning the necessity of the proposed safety measures because the bases for the opinions were already disclosed in 2020. For these reasons, we affirm the declaratory judgment order.

*Affirmed.*