PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA

                                                              OPINION BY
v.  Record No. 161676                          JUSTICE STEPHEN R. McCULLOUGH
                                                            December 14, 2017
JAMES WILLIS CAMPBELL, SR.


FROM THE COURT OF APPEALS OF VIRGINIA

We consider in this appeal whether evidence of a search must be suppressed under Code § 19.2-54 because a magistrate incorrectly faxed only portions of a search warrant to the clerk of the circuit court.  The Court of Appeals concluded that this delivery defect meant that the search warrant did not satisfy the requirements of Code § 19.2-54 and, as a consequence, the warrant, and the search made under the authority of that warrant, were invalid.  We will assume that the magistrate's incomplete faxing rendered the search warrant invalid under Code § 19.2-54, but we will reverse on the alternate ground that the search was justified as a warrantless search under the exigent circumstances exception to the warrant requirement.

BACKGROUND

I.        A TIP ARRIVES ABOUT AN IMMINENT METHAMPHETAMINE "COOK."

For over a week in early August 2014, Sheriff's Office Investigator James Begley had been in contact with a paid informant about a possible "meth cook" at James Campbell's house. A "cook" refers to the process for making methamphetamine.  Initially, Campbell's efforts were thwarted because he could not locate sufficient quantities of pseudoephedrine to proceed. Finally, on August 6, 2014, Investigator Begley received multiple phone calls from the informant, who told him "it looked like . . . there was going to be a cook at Mr. Campbell's house."  The informant, who was present at the scene, described to Investigator Begley what was

occurring on Campbell's property in anticipation of the "cook," such as rolling up aluminum foil and crushing Sudafed.

Begley told the informant to keep him "apprised." He then contacted a specialized team at the State Police as well as his superiors within the Sheriff's Office. As Investigator Begley was making his preparations, the informant told Begley that Campbell was "preparing the stuff now in the shed." While other law enforcement officers were positioning themselves near Campbell's shed, Begley applied for and obtained a search warrant. Investigator Begley signed his copy of the application for the search warrant at 10:30 p.m. The warrant reflects that the magistrate issued the warrant at 10:47 p.m. Investigator Brandon Hurt was able to observe the activity on Campbell's property for between 45 minutes to an hour before the team executed the warrant.

Law enforcement officers drove to a location near Campbell's property and assembled in the woods to observe. The "cook" was to take place in a small shed on Campbell's property. Begley estimated the shed's dimensions were, at most, 10 feet by 12 feet. Campbell's trailer is located near the shed, and a driveway separates Campbell's trailer from the shed. Another mobile home is located 25 to 30 yards from the shed. Investigator Brandon Hurt with the Sheriff's Office took a position approximately 25 to 30 yards from the shed. He watched for approximately 45 minutes to an hour. Four persons were present at Campbell's home: the defendant, his daughter, Timothy Birch, and the informant. Investigator Hurt could see a woman taking a roll of aluminum foil from the trailer to the shed. He also observed a man taking a short piece of hose into the shed. Hurt could see "a lot of smoke" coming from inside the shed and he could hear people talking "either in front of the shed or inside the shed."

Special Agent Glen Phillips of the Virginia State Police explained that the manufacture of methamphetamine presents a significant fire hazard. In addition, manufacturing methamphetamine employs and creates toxic substances, including ammonia gas, which can cause respiratory difficulties or blindness and even death. Investigator Begley, who has experience with methamphetamine investigations and who has been trained on the subject, testified that methamphetamine is manufactured with volatile chemicals that are highly combustible. It can produce an "extremely carcinogenic" gas, including phosphine gas and chlorine gas. Investigator Begley acknowledged he did not know what the "blast radius" would be for the type of methamphetamine "cook" that occurred at the shed.

The informant, who was present at the scene, stepped aside to call Investigator Begley on his cell phone and plead with him, "where y'all at, where y'all at, they're starting to make this thing, man." Police executed the search warrant around 11:52 p.m., approximately an hour after Investigator Begley submitted his search warrant application to the magistrate. Police recovered methamphetamine and precursors to methamphetamine during the search.

II.    THE SUPPRESSION MOTION, TRIAL AND APPEAL.

Code § 19.2-54 imposes a number of requirements for search warrants. As relevant here, it requires a judicial officer issuing a warrant, usually a magistrate, to file the affidavit submitted in support of the warrant by law enforcement personnel with the clerk of the circuit court of the city or county where the search is to take place, either in person, by mail, or electronically, within seven days. The final paragraph of Code § 19.2-54 provides as follows:

> Failure of the officer [here, a magistrate] issuing such warrant to file the required affidavit shall not invalidate any search made under the warrant unless such failure shall continue for a period of 30 days. If the affidavit is filed prior to the expiration of the 30-day period, nevertheless, evidence obtained in any such search

3

shall not be admissible until a reasonable time after the filing of the required affidavit.

Investigator Begley explained that the magistrate ordinarily asks for three copies of the warrant affidavit: one for the police officer, one for the target of the investigation, and one for the magistrate who will file it with the clerk of court. In this instance, Begley handed the magistrate one copy and left with the remaining two.

Due to a faxing error or problem, the clerk of court never received a complete affidavit. The magistrate submitted four pages to the clerk of court by fax. The first page consists of the affidavit for the search warrant. The second page is the search warrant itself. The third page is a duplicate of the search warrant. The final page is a blank copy of the search inventory and return. The affidavit page the clerk received included a description of the offense, a paragraph describing the place to be searched, and another paragraph listing the things or persons to be searched. The second, missing page, contained a paragraph describing the basis for probable cause and another paragraph setting forth the fact that the information came from an informant and setting forth the basis for the officer's belief that the informant was credible or reliable.

Campbell was charged with manufacturing methamphetamine, in violation of Code § 18.2-248. Seizing on the fax problem, Campbell moved to suppress the evidence. Relying on Code § 19.2-54, he argued that the magistrate's failure to timely file the required application and affidavit with the clerk's office rendered the warrant invalid. The Commonwealth responded, among other things, that even without a warrant, the search was justified by exigent circumstances. The trial court ultimately agreed that the warrant was defective, but denied the suppression motion, concluding that the search was justified by exigent circumstances. Campbell was convicted and sentenced to serve twenty-five years in prison, with fourteen years suspended.

4

Campbell appealed to the Court of Appeals. A panel of that court reversed the trial court's decision, reasoning that Code § 19.2-54 rendered the fruits of the search categorically inadmissible as a matter of state law. *Campbell v. Commonwealth*, 66 Va. App. 677, 791 S.E.2d 351 (2016). The Court rejected the Commonwealth's alternative arguments on the basis that the admissibility of the search under the Fourth Amendment was irrelevant because, "[a]s a matter of state law, the evidence was inadmissible." *Id.* at 688, 791 S.E.2d at 356. We granted the Commonwealth an appeal from that decision.

ANALYSIS

I.      CODE § 19.2-54 DOES NOT APPLY IF A SEARCH IS JUSTIFIED AS A WARRANTLESS SEARCH.

Initially, we conclude that Code § 19.2-54 does not impose any bar to the admissibility of the fruits of *warrantless* searches. This statute governs search warrants. It provides in relevant part that the

> [f]ailure of the officer [here, a magistrate] *issuing such warrant* to file the required affidavit shall not invalidate any search made *under the warrant* unless such failure shall continue for a period of 30 days. If the affidavit is filed prior to the expiration of the 30-day period, nevertheless, evidence obtained in any such search shall not be admissible until a reasonable time after the filing of the required affidavit.

(Emphases added.) Code § 19.2-54 addresses the possible invalidity of a search made "under the warrant" as a consequence of the failure of the magistrate to file the warrant with the clerk of the circuit court. Whatever the scope of inadmissibility contemplated by Code § 19.2-54 for searches made under a defective warrant, nothing in the plain language of this statute compels the exclusion of evidence obtained in the course of a search that is justified on grounds other

5

than a warrant.[1]  We will assume that the search warrant was invalid under Code § 19.2-54.  We turn next to the question of whether the search was justified as a warrantless search under the exigent circumstances doctrine.

II.    EXIGENT CIRCUMSTANCES JUSTIFIED A WARRANTLESS SEARCH.

The Fourth Amendment generally requires police to obtain a search warrant before entering a home.  *See, e.g., Commonwealth v. Robertson*, 275 Va. 559, 564, 659 S.E.2d 321, 324 (2008).  Despite the absence of a warrant, however, police may lawfully enter a home, and outbuildings like a shed, if they have probable cause coupled with exigent circumstances.  *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam).  The exigent circumstances exception to the warrant requirement "applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'"  *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona,* 437 U.S. 385, 394 (1978)) (some internal quotation marks omitted).

The United States Supreme Court has not squarely addressed whether a search under a defective warrant can nevertheless be upheld on an independent ground such as exigent circumstances.[2]  We conclude, as have a number of other courts, that the procurement of a

---

[1] In addition to expressing no opinion concerning the existence or scope of any suppression remedy under Code § 19.2-54, we also need not reach the Commonwealth's alternate argument that an implicit statutory good faith exception can salvage the fruits of a search even if the warrant is defective under Code § 19.2-54.

[2] In *Groh v. Ramirez*, 540 U.S. 551, 558 (2004), the Court observed that "the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law."  However, the Court found the search unjustified as a warrantless search as well.  *Id*. at 565.  Similarly, in *Coolidge v. New Hampshire*, 403 U.S. 443, 453 (1971), the Court stated that "the seizure and search of the Pontiac automobile cannot constitutionally rest upon the warrant issued. . . . [T]he search stands on no firmer ground than if there had been no warrant at all.  If the seizure and search are to be justified, they must, therefore, be justified on some other theory."  Again, however, the Court concluded that none of the exceptions could justify the

6

defective warrant does not require suppression if the search is nonetheless justified on an

alternate ground.[3]

First, as a conceptual matter, it is the ultimate reasonableness of the search that matters

under the Constitution. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("[T]he touchstone of the

Fourth Amendment is reasonableness.") (citation omitted). "Reasonableness, in turn, is

measured in objective terms by examining the totality of the circumstances." *Id.* Furthermore,

the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-

specific nature of the reasonableness inquiry." *Id.* If the search was objectively reasonable

under an independent ground, there is no reason to order the suppression of evidence. Because

the test for exigent circumstances is an objective one, *King*, 563 U.S. at 460, 464, the fact that a

diligent and conscientious officer acting under time-pressure actually succeeds in obtaining a

---

seizure of the car under the facts of that case. *Id.* at 473. At a minimum, these statements are not antithetical to the approach we adopt.

[3] *See Graves v. Mahoning Cnty.*, 821 F.3d 772, 775 (6th Cir. 2016) (reasoning, in a § 1983 case, that "[t]he plaintiffs may not prevail merely by showing that they were arrested with a defective warrant; they must show that they were unreasonably seized" and that the Fourth Amendment "prohibits 'unreasonable searches and seizures,' not warrantless ones"); *United States v. Poole*, 718 F.2d 671, 675 (4th Cir. 1983) (upholding search on the basis of exigent circumstances despite defects in the search warrant); *United States v. Clark*, 559 F.2d 420, 426 (5th Cir. 1977) (noting that "[i]t is well established that evidence gained by a search conducted under authority of a defective search warrant may still be admissible if an exception to the warrant requirement is present" and upholding the search under the automobile exception); *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971) ("While the defendant has attacked the validity of the search warrant in this case, we do not find it necessary to pass on this question, because we believe that the search can be justified as a warrantless search."); *State v. Tomah,* 586 A.2d 1267, 1268-69 (Me. 1991) ("Because these officers could have searched defendant's vehicle without a warrant, they should not be penalized because they attempted to get a warrant [that turned out to be defective]."); *Adkins v. State*, 717 S.W.2d 363, 365-66 (Tex. Ct. App. 1986) ("[T]he actual procuring of a warrant does not preclude the use of exigent circumstances to justify a search, should the warrant fail."); *State v. Bradley,* 227 S.E.2d 776, 779 (Ga. Ct. App. 1976) ("[T]he fact that a defective warrant has issued between the time of the seizure and the search will not destroy the validity of that search as a 'reasonable' warrantless search.").

warrant does not mean that another officer under the same pressure is objectively unreasonable for responding without seeking a warrant. Therefore, we conclude that the existence of a technically defective warrant does not require suppression of evidence if the search may be justified on an independent ground.[4]

Of course, when the government has obtained evidence based on a warrantless search, the burden rests with the government to prove probable cause and exigent circumstances. *Verez v. Commonwealth*, 230 Va. 405, 410, 337 S.E.2d 749, 753 (1985).

The issue comes down to this: if Investigator Begley had not obtained a warrant under the circumstances he faced, and had instead assembled the law enforcement team and raced to the scene of the "meth cook" that was either on the cusp of, or actually was, taking place, would such a warrantless search be justified under the exigent circumstances exception to the warrant requirement? We conclude the answer is "yes."

In *Verez*, 230 Va. at 410-11, 337 S.E.2d at 753, we set forth a non-exclusive list of factors relevant to a determination of exigent circumstances:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

---

[4] We note parenthetically that any defect in the validity of the warrant under state law does not, of itself, invalidate the warrant under the United States Constitution. *See, e.g., Virginia v. Moore*, 553 U.S. 164, 171 (2008).

8

First, as to probable cause, Investigator Begley received a detailed series of tips from a known reliable informant about a "meth cook" that was about to take place. Police officers personally observed conduct consistent with the informant's tips. The existence of probable cause is not in doubt here.

Second, the officers were aware of the dangers inherent in the manufacture of methamphetamine. Investigator Begley and Special Agent Phillips both testified about the highly toxic nature of the chemicals employed in the process and the grave danger that exposure to these substances can present. They also explained the serious risk of fire or explosion that inheres in the enterprise. Many courts have pointed to the dangers associated with the manufacture of methamphetamine in upholding a finding of exigent circumstances. *See, e.g., United States v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002) ("The potential hazards of methamphetamine manufacture are well documented, and numerous cases have upheld limited warrantless searches by police officers who had probable cause to believe they had uncovered an on-going methamphetamine manufacturing operation.") (collecting cases). In the present case, the officers could hear the voices of individuals either inside or immediately outside of the shed where the "meth cook" was allegedly taking place, and they knew that multiple persons were in danger of fire, explosion, or toxic exposure.[5] As it turns out, nobody was injured. But at the time Investigator Begley received the last in a series of tips from the informant, he did not have the benefit of hindsight.

Third, the degree of urgency involved is also a relevant consideration. The informant told Investigator Begley that a "meth cook" was about to occur – not that it would occur the next

---

[5] We reject Campbell's argument that those present had assumed the risk of death or serious injury, and that this assumption of the risk defeats exigent circumstances. The exigency arising from the need to protect human life extends to the guilty as well as the innocent.

9

day or the week after. Although Investigator Begley was able to quickly obtain a warrant, the facts confronting him would have justified a decision to proceed immediately to the scene. When Investigator Begley received a series of increasingly agitated tips about the impending "meth cook," time was of the essence.

Fourth, the gravity of the offense is a relevant consideration when examining the presence of exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 750-52 (1984). In *Welsh*, the Court concluded that exigent circumstances were not present when the offense at issue was "extremely minor," such as a non-jailable traffic violation. *Id*. at 753. In contrast, the manufacture of methamphetamine can in no way be deemed to be "minor"; rather, it is a felony that carries a punishment range of five to forty years, and even longer sentences in some circumstances. *See* Code § 18.2-248. One of those circumstances, which calls for a mandatory minimum sentence of five years and a maximum sentence of life in prison, is the manufacture of ten grams or more of methamphetamine. Code § 18.2-248(C)(4).

Finally, the disposability of evidence and the risk of flight are also relevant considerations. As the trial court noted, the ingredients needed to make methamphetamines could be readily "hidden, poured out, [or] disposed of." In addition, because the search in this case took place at night, it would have been easier for one or more of the perpetrators to escape under cover of darkness. Both of these circumstances further support a finding of exigent circumstances.

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the Court of Appeals, reinstate the trial court's order of conviction, and enter final judgment for the Commonwealth.

*Reversed and final judgment.*

10