COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia


QUINCY DIONE BASKERVILLE, S/K/A
  QUINCY DIONNE BASKERVILLE

                                                              OPINION BY
v.        Record No. 0837-21-2              JUDGE DORIS HENDERSON CAUSEY
                                                         FEBRUARY 21, 2023

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                           W. Reilly Marchant, Judge

            Samantha Offutt Thames, Senior Assistant Public Defender
            (Virginia Indigent Defense Commission, on briefs), for appellant.

            Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        The Circuit Court for the City of Richmond convicted Quincy Dione Baskerville,

appellant, of two counts of possession with intent to distribute a Schedule I or II drug, second or

subsequent offense.  On appeal, he challenges the trial court's denial of his motion to suppress

drugs that police officers found on his person after their warrantless entry into his home.

Appellant argues that the officers had neither probable cause nor exigent circumstances to justify

the entry.  For the following reasons, we reverse the judgment of the trial court, vacate

appellant's convictions, and remand the case for further proceedings consistent with this opinion.

BACKGROUND[1]

On April 22, 2020, Richmond City police officers responded to a 911 "disorderly" call. The caller, a woman, reported having a verbal altercation with her boyfriend, who had been drinking, was often violent when he drank, and had vandalized their apartment. Body camera footage captured the officers' subsequent investigation of the complaint.

When the police arrived at the apartment complex, there were no signs of a disturbance. The officers proceeded to the unit from which the 911 call was initiated. They knocked on the door and a young woman, later identified as the 911 caller, Selena Dickens, opened the door and spoke as she walked out of the unit. She did not identify herself as the 911 caller at the time nor did she appear to be injured or distressed. Dickens proceeded to enter the apartment unit immediately next door.

Moments later, an older woman came to the open door of the unit from which the 911 call was initiated. Presumably referring to Dickens, the woman told Officer Brandy Thornton that "the girl next door messed with my nephew" and they "were over there fighting or something." The woman said that Dickens had come over to her unit and locked the door. Soon thereafter, the woman's nephew kicked her door, and at that point, the woman told Dickens to call the police. The woman also said that Dickens had returned to the apartment unit next door when the police arrived. As Officer Thornton walked toward the apartment unit next door, he noticed a broken window between the two apartments, which the older woman said her nephew had broken.[2]

_____

[1] "In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)).

[2] Although the woman did not identify by name the person who kicked her door and broke her window, the reasonable inference from the context of her statements is that she was referring to her nephew, later determined to be appellant.

Dickens opened the door of her apartment when Officer Thornton knocked. She appeared composed and unharmed. As Dickens stepped out to talk with Thornton, he noticed another person, later identified as appellant, standing behind the apartment door. At the officers' command, appellant showed his hands, revealing only a box of cigarettes. Officer Thornton asked, "do you mind if we just step in real quick?" Dickens consented, but appellant immediately refused and blocked the doorway, standing slightly behind the partially open door. He stated that he was a resident of the apartment and repeatedly told the officers they could not enter.

The officers remained outside the threshold while Dickens stood in the doorway. Officer Thornton noticed a TV in the apartment lying face down on the floor. Dickens told Thornton that appellant had "a medical condition." After a few minutes passed, appellant agreed to come outside and speak with the police. Dickens moved from outside the doorway and stood by the officers.

Appellant remained inside the apartment at the doorway and told the police to stay where they were. Officer Thornton then told appellant to "come on," which triggered an agitated response from appellant. Thornton moved closer to appellant and warned him not to raise his voice, as he was trying to "give [appellant] a pass." The shouting match between the two men escalated, with each physically pointing fingers at the other. Appellant told Thornton, "you can't

give me a pass . . . I know where you live at, I know where your family is at,"[3] to which

Thornton replied, "it don't [sic] matter."

Appellant tried to close the door, but Officer Thornton kept it open with his leg and hand. Then Thornton, followed by two other officers, stepped through the door and entered the apartment, as appellant repeatedly protested, "now you['re] violating." While the other officers restrained appellant by pinning him to the floor of the apartment, Thornton questioned Dickens. She told him that appellant had punched her in the face earlier that evening after she tried to take away his drink at a party.

Based on Dickens's statements, the police arrested appellant for domestic assault and battery. During a search of his person incident to arrest, the police found heroin and cocaine in a bag appellant had slung over his shoulder. During the search, they also obtained his identification and discovered he had an outstanding warrant from Henrico County.

Appellant moved to suppress the drugs found on his person, arguing that the officers had unlawfully entered his home without a warrant and lacked both probable cause and exigent circumstances. Noting that there had been a complaint of domestic violence and property damage, as well as appellant's threatening conduct toward the officers on the night of his arrest, the trial court found that the police had probable cause to enter the apartment. The court also found that there were sufficient exigent circumstances, characterizing the situation as "a powder keg" that "was ready to blow up." The court denied the suppression motion.

---

[3] It is not entirely clear from the heated exchange between appellant and Officer Thornton whether appellant said, "I know where your family is at" or "I know where you stay and everything." When the body camera footage was played at trial, the prosecutor asked Thornton to verify what appellant had said. Thornton confirmed that appellant said he knew where Thornton lived and where his family was. Neither party has challenged his testimony as inaccurate. This Court, "on appellate review, view[s] video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). Our holding, however, is the same whichever statement appellant made.

Appellant entered conditional guilty pleas, preserving the right to appeal the denial of his suppression motion. The trial court accepted his pleas, found him guilty of all charges, and sentenced him to forty years of incarceration, with thirty-three and one-half years suspended.[4] This appeal follows.

STANDARD OF REVIEW

Appellant "bears the burden of establishing that the denial of his suppression motion was reversible error." *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008). "[An appellant's] claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." *King v. Commonwealth*, 49 Va. App. 717, 721 (2007). "Thus, 'we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.'" *Shiflett v. Commonwealth*, 47 Va. App. 141, 145-46 (2005) (quoting *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004)). "[W]e 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

ANALYSIS

(1) Fourth Amendment Violation

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The focus of Fourth Amendment analysis is whether law enforcement officers acted

---

[4] Appellant's plea agreement stated that thirty-three and one-half years of his total forty-year sentence would be suspended and that he would serve seven and one-half years. This calculation was clearly a mathematical error, which the trial court repeated in announcing appellant's sentence. The final order states that appellant's total sentence was forty years, with thirty-three and one-half years suspended, thus leaving six and one-half years to serve.

reasonably, as only unreasonable searches and seizures are prohibited. *See King*, 49 Va. App. at 723. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). If the government's conduct violates the Fourth Amendment, the resulting evidence is subject to exclusion at trial. *Murray v. United States*, 487 U.S. 533, 536 (1988).

The unlawful "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972)). At the "very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (quoting *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (internal quotation marks omitted)).

The police may enter a home without a warrant when they "have probable cause to enter . . . but exigent circumstances excuse the need to obtain a warrant." *Ross v. Commonwealth*, 61 Va. App. 752, 760 (2013). "[T]he burden rests with the government to prove . . . exigent circumstances." *Commonwealth v. Campbell*, 294 Va. 486, 495 (2017). A finding of exigency justifying warrantless entry is not "based on a retrospective analysis of the circumstances." *Moreno v. Commonwealth*, 73 Va. App. 267, 276 (2021). Instead, the circumstances are considered as they appeared to a reasonably trained police officer when the decision to enter was made. *See id.* "[A] finding of exigency must be tied to actual information about present circumstances and not mere theorizing." *White v. Commonwealth*, 73 Va. App. 535, 556 (2021). Further, the exigency exception is applied "case[]by[]case" and looks to the totality of the circumstances. *Lange*, 141 S. Ct. at 2018 (quoting *Birchfield* v. *North Dakota*, 579 U.S. 438, 457 (2016)).

In *Verez v. Commonwealth*, 230 Va. 405, 410-11 (1985), the Supreme Court enumerated factors to be considered in determining the presence of exigent circumstances:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

These factors are neither exhaustive nor "a checklist to be applied mechanically with some raw number of factors resulting in a finding of exigency." *White*, 73 Va. App. at 555.

Applying the *Verez* factors to this case, we hold that no exigent circumstances justified the officers' warrantless entry into appellant's home. First, there was no urgency requiring immediate entry. "[T]he urgency inquiry is focused on whether there is an emergency situation, such as continuing criminal activity, a person requiring medical care, or the destruction of evidence, that likely will worsen if the officers take the time necessary to get a warrant." *White*, 73 Va. App. at 556. When the police arrived in response to the "disorderly" call, there was no ongoing disorderly conduct or any indication of any other ongoing crime. Dickens appeared unharmed when she first opened the door to Officer Thornton's knock, and she said nothing about the earlier disturbance as she walked past him to her apartment next door. The officers had no reasonable belief that contraband would be removed or destroyed; in fact, they had no belief any contraband would be found. There were three officers on the scene. A situation is not "urgent" if "it appears that there is no imminent change to the circumstances about to occur and that the status quo largely can be maintained while the officers seek a warrant." *Id*. at 556-57.

The trial court described the situation as a "powder keg" ready to explode, but there was little, actual possibility of danger to others. Dickens was outside the apartment standing near the police officers while appellant stood in his apartment behind the partially open front door. The police had received no information that appellant was armed and had no reason to believe he had a weapon. When asked to show his hands, appellant displayed a cigarette box. He made no furtive or sudden movements that suggested he had a weapon. *Cf. Hill v. Commonwealth*, 297 Va. 804, 821-22 (2019) (holding that appellant's furtive movements and lack of cooperation when asked to show his hands gave police a reasonable basis for believing that the defendant was reaching for a weapon).

Although appellant became increasingly agitated throughout the encounter, his insistence that the officers not enter his home did not automatically create exigent circumstances or authorize the police to disregard the Fourth Amendment. *See Est. of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 904 (4th Cir. 2016) (concluding, in the context of whether police used excessive force in violation of the Fourth Amendment, that "noncompliance with police directives and nonviolent physical resistance do not necessarily create 'a continuing threat to the officers' safety'" (quoting *Meyers v. Baltimore County*, 713 F.3d 723, 733 (4th Cir. 2013))). Neither appellant's refusal to step outside nor his outburst at Officer Thornton created a genuine possibility of danger to the people present that justified a warrantless entry.

A finding of exigency requires "a clear showing of probable cause" at the time of entry. *Verez*, 230 Va. at 411. We assume without deciding that the statements appellant made to Officer Thornton amounted to a threat and established probable cause for obstruction of justice. *See* Code § 18.2-460(B) ("[A]ny person who, by threats or force, knowingly attempts to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties as such

- 8 -

. . . is guilty of a Class 1 misdemeanor."). But the offense was a nonviolent misdemeanor. A "relevant consideration" in assessing the presence of exigent circumstances is "the gravity of the offense." *Campbell*, 294 Va. at 496. The officers were investigating the reported domestic altercation, which the trial court noted could escalate quickly and become more serious. But the officers observed only property damage and possibly vandalism, both crimes that involve a low level of violence. Thornton did not learn of the domestic battery allegation until after the officers had entered appellant's apartment and restrained him. The officers had no reason to believe that appellant had committed a serious, violent offense before they entered his apartment. "[T]he exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense" is involved. *Welsh*, 466 U.S. at 753 (rejecting the government's argument that exigent circumstances supported police officers' warrantless entry into the defendant's house after receiving a report that he had driven his car off the road into a field and arresting him for driving under the influence, which carried only a fine for a first offense). Here, the circumstances surrounding the entry weigh against finding exigency.

The officers reasonably believed the suspect, later identified as appellant, was in the apartment, but they had no reason to think he was likely to escape. Appellant remained in his apartment within sight of the officers during the entire encounter, and he gave no indication that he intended to flee. Contrary to the Commonwealth's argument, Officer Thornton was not in "hot pursuit" when appellant stepped back from the doorway as Thornton barged into the apartment. *See id.* (concluding that "the claim of hot pursuit [was] unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime"). Further,

the police pursuit of a person charged with a misdemeanor does not categorically justify a warrantless entry into his residence.  *See Lange*, 141 S. Ct. at 2021-22.[5]

Considering the circumstances in their totality, we find no basis for concluding any exigency existed.  We therefore hold that the warrantless entry by police into appellant's home violated the Fourth Amendment.  *See United States v. McCraw*, 920 F.2d 224, 229 (4th Cir. 1990) (holding that where the defendant opened the door of his hotel room "only halfway to determine who was knocking" and immediately "attempted to close it," police officers violated the Fourth Amendment when, acting without a warrant, they forced their way into the room to arrest the defendant for drug distribution).

### (2)  Exclusionary Rule

The Commonwealth seems to argue that the exclusionary rule's purpose of deterring flagrant police conduct would not be served here.  In other words, because the police committed no purposeful wrongdoing and entered the apartment in good-faith belief that their actions were legal, it is inappropriate to suppress the drugs they discovered.  We disagree because the police misconduct here is flagrant and thus triggers the exclusionary rule.

Not every Fourth Amendment violation requires that the evidence be suppressed.  *See Jones v. Commonwealth*, 71 Va. App. 375, 383 (2019).  Excluding evidence should be a "last resort [rather than the] first impulse."  *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).  The test for applying the exclusionary rule is "'whether a

---

[5] A police officer followed Lange into his garage after Lange had ignored the officer's signals to pull over while driving on the highway; Lange was charged with driving under the influence.  *See Lange*, 141 S. Ct. at 2013.

reasonably well[-]trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Id.* (quoting *Herring*, 555 U.S. at 145). "[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Jones*, 71 Va. App. at 384 (quoting *Heien v. North Carolina*, 574 U.S. 54, 67 (2014)).

The misconduct at issue does not involve a new or recently amended statute or significant clarification of binding precedent, *cf.*, *Collins*, 297 Va. at 220 (declining to apply the exclusionary rule when "no binding precedent had held that the automobile exception was inapplicable to a vehicle parked in a private driveway located close enough to a home to be considered within the curtilage" and there was binding precedent with a "subsequent line of cases that applied the automobile exception to driveways"), but well-established tenets observing a citizen's right to privacy in the sanctity of his home.[6] There was neither exigency nor any other valid reason to enter appellant's apartment without a warrant. Under the circumstances, a reasonably well-trained officer would have known that warrantless entry into appellant's apartment was illegal and unnecessary. Failing to impose the exclusionary rule here would reward "a 'sloppy study of the law.'" *Jones*, 71 Va. App. at 384 (quoting *Heien*, 574 U.S. at 67). Thus, we hold that the evidence here is subject to exclusion.

Other Exceptions to Exclusionary Rule

In *Utah v. Strieff*, 579 U.S. 232, 238 (2016), the Supreme Court recognized three exceptions to the exclusionary rule—independent source doctrine, inevitable discovery doctrine, and the attenuation doctrine. Here, the Commonwealth argues only the independent source and attenuation exceptions, but, for the reasons below, we conclude that neither applies to the facts of

---

[6] Over two and a half centuries ago, William Pitt, Earl of Chatham, declared that "[t]he poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail—its roof may shake—the wind may blow through it—the storm may enter—the rain may enter—but the King of England cannot enter!" Henry Lord Brougham, *Historical Sketches of Statesmen in the Time of George III* First Series Vol. 1 (2007).

this case.  Accordingly, the drugs found in appellant's possession after he was arrested and searched should have been suppressed as "fruit of the poisonous tree."  *See generally Commonwealth v. Ealy*, 12 Va. App. 744, 754 (1991).  Thus, the trial court erred in denying the motion to suppress.

(A)  Independent Source Doctrine

The Commonwealth argues that finding the drugs in appellant's bag was independent of the unlawful entry.  It contends that Dickens's statement that appellant punched her was an independent source for officers finding the drugs, because the statement gave officers probable cause to lawfully arrest appellant without a warrant, which would have led to the discovery of the drugs in the search incident to his arrest.[7]  We disagree.

The "independent source doctrine allows the admission of evidence that has been discovered by means *wholly independent* of any constitutional violation."  *Carlson v. Commonwealth*, 69 Va. App. 749, 760 (2019) (emphasis added) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)); *see id.* at 760-61 (discussing *Murray v. United States*, 487 U.S. 533 (1988), and *Segura v. United States*, 468 U.S. 796 (1984), two cases applying the independent source doctrine when police obtained warrants based on information in their possession before the constitutional violation and executed those warrants after the constitutional violation).  The doctrine "works to put the Commonwealth in the same position it would have been in if there was no police error or misconduct."  *Carlson*, 69 Va. App. at 760.

Here, the initial complaint referred to a "disorderly," a verbal altercation and a TV thrown to the floor.  The police had no basis for probable cause to arrest appellant for battery

---

[7] Under Code § 19.2-81.3(A), police "may arrest without a warrant" for an alleged assault or battery against a household member, "if such arrest is based on probable cause . . . or the reasonable complaint of a person who observed the alleged offense or upon personal investigation."  *See* Code § 18.2-57.2(A) ("Any person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor.").

other than Dickens's allegation, but she did not tell Officer Thornton that appellant had punched her until after the police had entered appellant's apartment unlawfully and restrained him.[8] Consequently, the independent source doctrine does not apply because Dickens's statement was not untainted by the original constitutional violation. *See id*. at 761-62 (rejecting the independent source doctrine when the police connected the odor of marijuana to the defendant only by entering his property unlawfully).

### (B)  Attenuation Doctrine

The Commonwealth also argues that appellant's active warrant attenuated "the connection between the evidence obtained from the search of his person and any potentially illegal conduct by the police."  Again, we disagree.

Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance[.]"  *Strieff*, 579 U.S. at 238.  In *Strieff*, the police stopped the defendant without having reasonable suspicion to do so.  *Id.* at 235, 239.  After learning his identity, they found an outstanding arrest warrant in his name and arrested him, discovering drugs on his person in the search incident to arrest.  *Id.* at 235-36.  The Supreme Court held that the outstanding warrant attenuated the unconstitutional stop from the drugs that the police found.  *Id.* at 243.

---

[8] Even if Dickens was an independent source, the police still needed an arrest warrant to lawfully arrest appellant inside his home based on her statements.  *See Payton v. New York*, 445 U.S. 573, 576 (1980) ("[T]he Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.").  Because the police acted without an arrest warrant, the drugs found incident to his arrest would still be subject to exclusion even if Dickens was an independent source.

Here, it is unclear whether police learned of the outstanding warrant before or after their discovery of the drugs.[9] For the attenuation doctrine to apply, the police would have had to discover the warrant before they found the drugs, as was the case in *Strieff*. It is the government's burden to establish that the search did not violate appellant's Fourth Amendment rights. *See Ealy*, 12 Va. App. at 752 (noting on appeal from the trial court's suppression of evidence that "when the Commonwealth seeks to justify a warrantless entry based on consent, it 'bears the burden of establishing consent'" (quoting *Walls v. Commonwealth*, 2 Va. App. 639, 645 (1986), *abrogated by Commonwealth v. Jones*, 267 Va. 532 (2004))); *Jefferson v. Commonwealth*, 27 Va. App. 1, 10 (1998) (concluding that, at a hearing on a motion to suppress, "the defendant has the burden of establishing standing by proving that he had a reasonable expectation of privacy in the place searched, and the Commonwealth has the burden of proving that the relevant searches or seizures did not violate the defendant's Fourth Amendment rights" (citations omitted)). The Commonwealth has not met its burden to establish that the attenuation doctrine applies here. Thus, we hold that the attenuation doctrine does not apply, and the evidence is subject to the exclusionary rule.

CONCLUSION

Officer Thornton violated the Fourth Amendment when he entered appellant's home without a warrant because no exigent circumstances justified the entry. Neither the independent source nor the attenuation exception to the exclusionary rule applies in this case. The drugs found in appellant's possession after he was arrested and searched are "fruit of the poisonous tree" and should have been suppressed. We therefore reverse the trial court's denial of

_____

[9] Officer Thornton testified that he did not recall whether appellant's bag was removed from his shoulder and searched before Thornton learned of appellant's outstanding warrant.

appellant's motion to suppress, vacate appellant's convictions, and remand the matter for further proceedings consistent with this opinion if the Commonwealth be so advised.

*Reversed, vacated, and remanded.*